OPINION OF THE COURT
Robert G. Hurlbutt, J.
This CPLR article 78 proceeding is commenced by two employees of the respondent City of Syracuse seeking a judg *131 ment "annulling, cancelling and setting aside the Respondent’s implementation of Section 8-112 (2) of the City Charter of the City of Syracuse-1960.” The proceeding is brought as a class action, and the parties have in their papers addressed the appropriateness thereof. However, since no specific motion for an order determining whether a class action may be maintained pursuant to CPLR 902 has been made, any consideration whether the proceeding should be permitted to be brought as a class action would be premature. Moreover, in view of the determination hereinbelow and principles of stare decisis, no class action treatment need be given. (See, Baumes v Lavine, 38 NY2d 296, 305.)
Petitioner Lee Fordock, a civil engineer in the city’s Water Department, resides within the city. Petitioner Richard J. Rogala, employed in the city’s Department of Community Development, resides in the Town of Geddes. Each seeks, in essence, a declaration of the nullity and/or unenforceability of the respondent’s City Charter provision mandating that city employees reside within the city during the continuance of their employment (Syracuse City Charter § 8-112 [2]). The city has urged, and petitioners seemingly concede, that an article 78 proceeding is not the appropriate mode in which to address the validity or invalidity of the legislative actions herein questioned. The proceeding is therefore converted to an action for a declaratory judgment, pursuant to CPLR 3001.
It appears that Charter § 8-112 (2) has purported to mandate residency within the city as to all city employees for more than 30 years. However, petitioners claim, and the city does not dispute, that there has been no enforcement of the residency requirement during most or all of the time since its enactment. Petitioner Fordock, for example, although a resident at the time he was hired in November 1962, resided outside the city from 1972 until 1982, and petitioner Rogala resided in the city when first employed in June 1984 but has lived outside the city since May 1985.
On November 6, 1990, the city electorate rejected a proposition which would have eliminated the residency requirement of Charter § 8-112 (2). Thereafter, the Common Council solicited applications for waivers of the residency requirement from all city employees, receiving more than 300 such applications. On June 17, 1991, the city waived the residency requirement as to all employees who certified that they resided outside the city as of November 6, 1990 with the proviso that the waiver was effective only as to the specific residence of the *132 employee on November 6, 1990. The Common Council also adopted a resolution determining not to grant waivers to city employees who had established residence outside the city after November 6, 1990. Neither petitioner here comes within that circumstance. Both petitioners, however, claim that their rights are infringed by the city’s enforcement of the residency requirement as against them and that, by reason of the long history of nonenforcement of the residency requirement, the city should be estopped from enforcing section 8-112 (2).
Petitioners concede, as they must, the constitutional validity of respondent’s requirement of residency within the city as a condition of employment. (See, McCarthy v Philadelphia Civ. Serv. Commn., 424 US 645; Winkler v Spinnato, 72 NY2d 402.) Petitioners also concede that, generally, municipalities are exempt from the application of the doctrine of equitable estoppel when acting within their governmental capacity. (See, e.g., Granada Bldgs. v City of Kingston, 58 NY2d 705; Public Improvements v Board of Educ., 56 NY2d 850; Matter of Schwartz v Crosson, 165 AD2d 147; Matter of Wood v Cordello, 91 AD2d 1178 [4th Dept 1983].) They urge, however, that the facts presented here amount to such exceptional circumstances as to require application of the doctrine of equitable estoppel, citing Bender v New York City Health & Hosps. Corp. (38 NY2d 662), Matter of Young v Supervisor of Town of Lloyd (159 AD2d 828), Brennan v New York City Hous. Auth. (72 AD2d 410), and Eden v Board of Trustees (49 AD2d 277). The city relies upon the general rule of the nonapplicability of the doctrine of estoppel to municipalities, and urges that the facts here do not rise to such extraordinary circumstances as to warrant its application.
In Bender v New York City Health & Hosps. Corp. (38 NY2d 662, supra), the Court of Appeals held that the doctrine of estoppel may be available under sufficient circumstances to excuse timely and proper filing of a notice of claim. The court noted: "We believe that where a governmental subdivision acts or comports itself wrongfully or negligently, inducing reliance by a party who is entitled to rely and who changes his position to his detriment or prejudice, that subdivision should be estopped from asserting a right or defense which it otherwise could have raised” (supra, at 668). Bender was cited and followed by the Third Department in holding that the defendant municipality was estopped from asserting an employee residency requirement in an article 78 proceeding for wrongful dismissal in Matter of Young v Supervisor of Town of *133 Lloyd (159 AD2d 828, supra). And in Eden v Board of Trustees (49 AD2d 277, supra), the Second Department applied the doctrine of estoppel to prevent the State University from choosing not to open a podiatric school to which some 24 students had been accepted for matriculation. The court there stated: "Estoppel against the State is to be applied only in truly exceptional cases, involving, as it often does, an intrusion, pro tanto, by the judiciary, into the prerogatives of other branches of the government * * * The courts must weigh the degree of manifest injustice against the effect, in the particular case, of intervention into the public processes”. (Supra, at 284.)
In Brennan v New York City Hous. Auth. (72 AD2d 410, supra), the court applied the doctrine of estoppel to prevent enforcement of residency requirements as to Housing Authority police officers. The 36 plaintiffs in that case had been employed by the Housing Authority for an average of 14 years and all resided within New York State when appointed to their positions. The qualifying examination did not specify any residency requirements, although such requirements were set forth in a combined examination as to other types of peace officers. Subsequent to their appointments, all plaintiffs had moved outside the State. "Most, if not all, moved only after receiving assurances from superior officers that their then contemplated move was lawful.” (Supra, at 411.) The Housing Authority assisted the officers in obtaining mortgages on their out-of-State residences and in obtaining New York State driver’s licenses and pistol permits. An Authority directive mandated that the plaintiffs move to approved geographic areas within the State as required by Public Officers Law § 30 within one year or forfeit their employment. The Second Department granted plaintiffs’ application for judgment declaring that the Housing Authority was estopped from enforcing the residency requirements of Public Officers Law § 30, noting that the Authority was fully aware of the residency of the plaintiffs and of the requirements of the law; that with such knowledge it affirmatively assisted plaintiffs in procuring and maintaining outside residences; that the plaintiffs were ignorant of the existence of the residency requirement, and justified in relying upon the writings of the personnel director of the City of New York to the effect that there was no residency requirement (supra, at 413), and that the plaintiffs had relied upon all of the conduct on the part of the Authority to their detriment by changing their residences during *134 their employment. It is interesting to note that the court in Brennan was equally divided on the issue of equitable estoppel. Two Justices voted for its applicability, and two against. The case was determined in favor of the plaintiffs because the concurring Justice concluded that Public Officers Law §30 was not applicable to plaintiffs. All agreed that a stringent test must be employed in ascertaining the applicability of equitable estoppel. The plurality opinion noted that the doctrine should be employed "in exceptional cases to promote the ends of justice, where judicial intervention will far outweigh the manifest injustice that has occurred or will occur”. (Supra, at 412.)
The issue here presented, then, is whether enforcement of the city’s residency requirements in the manner which it has pursued creates such manifest injustice to plaintiffs as to warrant this court’s intervention into respondent’s legislative prerogatives by equitably estopping such enforcement. Petitioner Fordock, who resides within the city, complains that as a result of the city’s refusal to issue prospective waivers he no longer has freedom to reside outside the city and that he has maintained a nearly 30-year career with the city assuming that he might reside within or without the city at his pleasure. Petitioner Rogala, employed since 1984, complains that the waiver permitting him to reside outside the city is limited to his specific residence as of November 1990, and therefore he must either remain in the same house or reside within the city. Petitioners urge that since Fordock cannot move out of the city and Rogala cannot move from his present residence except into the city a manifest injustice has resulted. I cannot agree. I do not find that the circumstances of either petitioner create such manifest injustice as to warrant court intervention into the respondent’s legislative prerogatives.
The most salient distinction between Brennan (supra) and the instant case is, of course, that here neither petitioner nor anyone similarly circumstanced is required to change his or her residence as a condition of his or her employment. Petitioner Fordock is at liberty to remain where he presently resides, or to change residences to anywhere within the confines of the City of Syracuse. Petitioner Rogala has precisely the same options. There is thus lacking here the crucial element in Brennan that the plaintiffs were faced with the choice of giving up their homes and uprooting their families or losing their employment. No such dilemma is confronted by these petitioners. Additionally, while both petitioners have *135 been permitted to reside outside the city without any consequences during the term of their employment, the city has not undertaken the affirmative actions relied upon by the court creating an estoppel in Brennan. There are no written materials or qualifying examinations suggesting the absence of a residency requirement. Neither is there any allegation of affirmative actions on the part of the municipality to assist the petitioners in moving from the city and in maintaining out of city residences. Thus, the circumstances here fall well short of those in Brennan with regard to the conduct claimed to give rise to the estoppel as well as the potential consequences to the petitioners flowing from enforcement of the residency requirement. It follows that there is no manifest injustice to the petitioners sufficient to justify judicial intervention into respondent’s legislative process, that estoppel ought not to be applied here, and that the petition should be dismissed.